IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORNELIUS LISTER | : | CIVIL ACTION |
|  | : | NO. 13-3013 |
|  | : |  |
| vs. | : |  |
|  | : |  |
| FITNESS INTERNATIONAL, LLC, d/b/a | : |  |
| LA FITNESS | : |  |

O'NEILL, J.                                                                                  April 3, 2014

## MEMORANDUM

Plaintiff Cornelius Lister alleges that he sustained injuries while using defendant's health club facilities at its Andorra, Pennsylvania location on September 5, 2012.

Plaintiff has been a member of defendant LA Fitness sport club since 2008. On November 29, 2008, plaintiff admittedly signed a membership agreement providing:

> **By signing this Agreement, Buyer acknowledges that Buyer is of legal age, has received a filled-in and completed copy of this Agreement has read and understands the entire agreement including but not limited to the \*EFT/CC Request (if applicable), the Release and Waiver of Liability and Indemnity, all other Additional Terms and Conditions on the reverse side hereof. L.A. Fitness recommends you consult your physician prior to beginning any exercise or weight loss program**.[1]

The membership agreement also provides:

> **IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY: You hereby acknowledge and agree that Member's use of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of being permitted to enter any facility of L.A. Fitness (a "Club") for any purpose including, but not limited to, observation, use of**

---
[1] The text of this paragraph appears in bold face.

**facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member is in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment.  Member also hereby agrees to indemnify L.A. Fitness from any loss, liability, damage or cost L.A. Fitness may incur due to the presence of Member in, upon or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness whether caused by the negligence of Member or otherwise.  You represent (a) that Member is in good physical condition and has no disability, illness, or other condition that could prevent Member from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Member's health.  Such risk of injury includes (but is not limited to):  injuries arising from use by Member or others of exercise equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments, among others; and accidental injuries occurring anywhere in Club dressing rooms, showers, and other facilities.  Member further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the State of Pennsylvania and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect.  Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from this Agreement have been made.**[2]

---

[2] The section quoted above appears in a box in bold face and larger font than the previously quoted language.

Plaintiff alleges that on September 5, 2012 he was injured when a physical altercation broke out on the basketball court at the Andorra, Pennsylvania L.A. Fitness location.  Plaintiff alleges that he was attacked by at least four other men including a man named Kalifh Moore who was a member of the club.  Apparently, one other assailant, Marguen Freedale, has been identified by the police and was not a club member.  There is evidence that the basketball court was limited to members and was not open to guests and that a club employee who was working at the front desk allowed non-members who participated in the assault to enter the club.

Before me is defendant's motion for summary judgment and plaintiff's response thereto. Defendant asserts that the exculpatory clause quoted above contained in the membership agreement is valid and protects it against liability.  Defendant also asserts that plaintiff has failed to establish negligence on its part.  Plaintiff asserts that the exculpatory clause in the membership agreement is unenforceable because it is ambiguous and because it does not apply to reckless conduct.  Secondly, plaintiff asserts that there is sufficient evidence of negligence on the part of defendant to go to a jury.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
> > (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

In Chepkevich v. Hidden Valley Resort, 2 A.3d 1174, 1189 (Pa. 2010) the Pennsylvania Supreme Court reiterated the standard by which the validity and enforceability of exculpatory clauses should be analyzed:

> It is generally accepted that an exculpatory clause is valid where three conditions are met.  First, the clause must not contravene public policy.  Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion.

Plaintiff does not assert that the exculpatory clause at issue contravenes public policy or that the contract between the parties is not between persons relating entirely to their private affairs or that plaintiff was not a free bargaining agent to the agreement.

As I have said what plaintiff does contend, firstly, is that the exculpatory clause is ambiguous. Plaintiff's argument is as follows:

> The release is ambiguous because it does not specifically apply to intentional acts by guests or to the club's negligence in failing to prevent those intentional acts. The types of injuries referred to in the release are those resulting from exercise, club activities, and accidents. Nothing in the release states that a member waives claims arising out of the intentional assaults by other users of the club or the club's failure to protect against such assaults.

In my view, this argument is without merit.

In the membership agreement plaintiff agreed that his use of defendant's facilities involved risk of injury to person and that he assumed full responsibility for such risk; further he agreed that he released and held defendant harmless from all liability to himself for any damages on account of injury to himself whether caused by the active or passive negligence of defendant while on defendant's premises; finally, that "risk of injury" included injuries arising from participation by himself or others in supervised or unsupervised activities at defendant's club. There is nothing ambiguous about this language. The injury alleged by plaintiff arose from his participation with others in a unsupervised activity at defendant's club.

Secondly, plaintiff asserts that the release does not apply to reckless conduct and that defendant was guilty of reckless conduct. Assuming, without deciding, that the release does not apply to reckless conduct, plaintiff's argument that defendant was guilty of such conduct consists of the following:

> In this case, the defendant recklessly disregarded its own policies limiting guest access to its club, requiring photo identification to be produced by all guests, and prohibiting guests from playing on the basketball court. A club employee intentionally allowed Moore's guests to enter the club without providing identification. The club knew that a high volume of people entered the club but failed to provide adequate staffing at its front desk to obtain identification from all guests.

In my view, the conduct attributed by plaintiff to defendant cannot be characterized as reckless and plaintiff cites to no authority supporting the proposition that it is. Plaintiff's conclusory statement that "defendant recklessly disregarded its own policies" is insufficient to make it so.

The Supreme Court of Pennsylvania has accepted the Restatement (Second) of Torts definition of recklessness and its commentary which emphasizes that "[recklessness] must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent. Tayer v. Camelback Ski Corp., Inc., 616 Pa. 385, 402 (2012), citing Restatement (Second) of Torts § 500 cmt. a (1956). The Tayer court noted that "recklessness, in contrast to negligence, requires conscious action rather than mere inadvertence" and is "an extreme departure from ordinary care, a wanton or heedless indifference to consequences . . ." Id. at 404 (additional citations omitted). Plaintiff has not presented any evidence of conscious action or heedless indifference on the part of defendant nor demonstrated that its conduct was more than inadvertence. Therefore, the membership agreement that plaintiff signed releases defendant from liability for plaintiff's injury.

I need not reach the issue of whether there is sufficient evidence of defendant's negligence.

An appropriate Order follows.